# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | |
|---|---|
| **HANNIE DEVELOPMENT INC., ET AL.** | **CIVIL ACTION: 6:19-CV-00833** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **COLONIAL OAKS ASSISTED LIVING LAFAYETTE, LLC, ET AL.** | **MAG. JUDGE PATRICK J. HANNA** |

## RULING

Pending here is the Application to Modify or Alternatively Partially Vacate Arbitration Awards [Doc. No. 1] filed by Hannie Development, Inc., and Cedar Crest, LLC (collectively "Sellers"). Colonial Oaks Assisted Living Lafayette, LLC, and Colonial Oaks Memory Care Lafayette, LLC (collectively "Buyers") have filed an opposition [Doc. No. 5]. Sellers have filed a reply [Doc. No. 10].

For the following reasons, the Application is DENIED.

## I. FACTS AND PROCEDURAL HISTORY

This is a dispute over funds held in escrow following the purchase and sale of two assisted living facilities in Lafayette: the Rosewood Retirement & Assisted Living Center and the Cedar Crest Personal Memory Living facility. Sellers and Buyers executed separate but materially identical Asset Purchase Agreements (the "APAs") relating to each facility. The APAs provide that 4% of the purchase price for each facility would be held in escrow "pursuant to the terms and conditions of a Holdback Escrow Agreement." [Doc. Nos. 1-2, and 1-3]. Accordingly, the parties also entered into separate but materially identical Holdback Escrow Agreements (the "HEAs" or "Escrow Agreements") [Doc. Nos. 1-4, 1-5].

Buyers placed a total of $660,000 in escrow. The escrowed funds –sometimes identified as the "Holdback Amounts" (the term used in the APAs) and the "Post-Closing Escrow Funds" (the term used in the HEAs) –were to serve two purposes under the parties' agreements. The relevant purpose for this Application is the one outlined in §2 of the HEAs. Section 2 provides, in relevant part, that the escrowed funds "shall be retained by the Escrow Agent . . . in the event that any claim, action or suit is then pending by Buyer against Seller for breach of any Survival Period Obligations (a 'Post-Closing Claim') . . . as security for the performance of the Survival Period Obligations." [Doc. No. 1-4 at p. 2; Doc. No. 1-5 at p. 2]. The HEAs define "Survival Period Obligations" as including "duties, obligations and liabilities of Seller under the [APAs] that survive the Closing." [Doc. No. 1-4 at p. 1; Doc. No. 1-5 at p. 1].

In line with §2 of the HEAs, §18.8(b) of the APAs provides for disbursement from the escrowed funds "[w]ith respect to Losses claimed by Buyer." [Doc. No. 1-2 at p. 57; Doc. No. 1-3 at p. 57]. Section 18.8(a) of the APAs states that such disbursement from the escrowed funds "shall constitute the sole and exclusive remedies (except with respect to Losses arising from fraud, bad faith or intentional misconduct on the part of any Party in connection with the transactions contemplated by this Agreement)." [*Id.*]

Within the one-year period that followed the closing of the transactions at issue, Buyers asserted four claims against Sellers which Buyers contended would be covered, in whole or in part, by disbursements from the escrowed funds. Sellers denied liability as to each claim. This triggered the dispute resolution provisions contained in the HEAs. Those provisions apply broadly to "any dispute, claim, or controversy of any kind between" Sellers and Buyers "arising out of or relating to the performance, meaning or interpretation of any provision of this Agreement or any document

2

executed in connection with this Agreement, whether such claim sound in contract or tort . . . ." [Doc. No. 1-4 at 4,5; Doc. No. 1-5 at 4,5]. The dispute resolution provisions call for arbitration of any dispute which the parties cannot resolve through negotiation or mediation, and provide that the arbitration will be subject to "the commercial dispute resolution procedures of the American Arbitration Association." [Doc. No. 1-4 at 5,6; Doc. No. 1-5, at 5,6].

In accordance with the dispute resolution provisions of the APAs, the parties attempted to mediate their dispute. After mediation failed, Sellers initiated arbitration by filing a demand seeking payment of the entire amount held in escrow. [Doc. No. 1-6]. Buyers responded by filing an "Answer and Statement of Claims/Counterclaim" in which they outlined each of the four claims that they previously had asserted against Sellers. [Doc. No. 1-7].

Of Buyers' claims, the one most relevant to Sellers' Application is that Sellers knowingly breached certain representations and warranties contained in the APAs themselves pertaining to Sellers' and the facilities' compliance with applicable health care laws. Sellers moved to dismiss that claim (among others) from the arbitration, arguing that it amounts to a fraud claim and that the exception in APA §18.8(a)'s "exclusive remedy" provision for Losses arising from "fraud, bad faith or intentional misconduct" renders it non-arbitrable. On November 7, 2018, the Arbitrator issued Interim Order No. 5. [Doc. No. 1-8], ruling that Buyers' breach of representations and warranties claim are not arbitrable, reasoning "it is a fraud claim which does not fall within the APA Section 18 exclusive remedy provisions." [*Id*. at p.3]

Buyers then filed a separate lawsuit in this Court asserting their breach of representations and warranties claims, *Colonial Oaks Assisted Living Lafayette, LLC et al. v. Hannie Development, Inc. et al,* No. 6:18-CV-01606.

3

Next the issue arose in the arbitration proceeding as to the disposition of that portion of the escrowed funds that was not necessary to cover Buyers' claims that remained in arbitration. After the entry of Interim Order No. 5, Sellers requested that the Arbitrator order the release of $300,000 from escrow. [Doc. No. 5-1]. Sellers argued that Interim Order No.5 contained a finding that Buyers' breach of representations and warranties claims "were excluded from the HEAs." [*Id*.] Sellers contended that this purported finding meant that "the escrowed proceeds are not available to satisfy these claims." [Id.]

Buyers responded by arguing that the release to Sellers of any portion of the escrowed funds would be improper under the HEAs, particularly §2. On December 14, 2018, the Arbitrator issued Interim Order No. 7, in which the Arbitrator noted the "clear" existence of "a dispute between the parties . . . on the release of any escrow funds." [Doc. No. 5-2]. He deferred ruling on Sellers' request for a partial release of the escrowed funds until the arbitration hearing on the merits and stated that "[t]he Final Award will contain a provision on the release of escrow funds." [*Id*.].

The arbitration hearing on the merits took place on January 22-23, 2019. In their Pre-Hearing Brief, Sellers listed "[w]hether an arbitration order to release escrowed proceeds is affected by Buyers' federal suit" as one of the issues to be decided [Doc. No. 5-3]. Buyers contend this signaled Sellers' agreement that the issue was properly submitted to the Arbitrator. Sellers continued to rely on their argument that the Arbitrator's determination that Buyers' breach of representations and warranties claims are not arbitrable meant that the escrowed funds are not available to satisfy those claims. [*Id*.]

On April 25, 2019, the Arbitrator issued his Partial Final Award. [Doc. No. 1-9] The Arbitrator issued an award to Buyers on one of the claims submitted to arbitration on the merits and denied Buyers any recovery on two smaller claims. [*Id*. at p. 21]. More significantly for purposes of the Application, the Arbitrator ruled that any escrow balance after payment of Buyers' award must remain in escrow until the federal lawsuit over Buyers' breach of representations and warranties claims is resolved. [*Id*. at p. 19-20].

In so ruling, the Arbitrator found that the HEAs controlled the issue. The Arbitrator quoted the provision in §2 of the HEAs that "[t]he post-closing escrow funds shall be retained by the escrow agent . . . in the event that any claim, action or suit is pending by Buyers against Seller for breach of any survival period obligation ('a post-closing claim') until the final, non-appealable resolution of such post-closing claim . . . ." [*Id*.] He went on to note the absence of any dispute that Buyers' breach of representations and warranties lawsuit qualifies as a "post-closing claim" as defined in the HEAs. [*Id*.] Finally, he found that releasing the escrow balance prior to resolution of the lawsuit would leave Buyers "without security for Sellers performance of the representations and warranties at issue." [*Id*.] That outcome would be at odds with the parties' intent expressed in §2 of the HEAs, [*Id*.] which provides that the escrowed funds are "security for the performance of the Survival Period Obligations." [Doc. No. 1-4 at p.2; Doc. No. 1-5 at p. 2].

Sellers filed a motion for modification of the Partial Final Award, in which they repeated their argument that the escrowed funds are not available to fund any recovery Buyers may realize in the federal court lawsuit, and that Sellers accordingly are destined to receive the balance of the escrowed funds regardless of the outcome of the federal court lawsuit. Sellers asked that a

5

provision "[a]warding Sellers the remaining funds in escrow" be added in order "to complete the award." [Doc. No. 5-4].

Again, the Arbitrator rejected Sellers' argument. The Arbitrator explained that the Sellers' requested change would not be a modification, as it "would actually reverse the decision on one of the issues addressed in the Award in Section E which fully resolves the issue of the disposition of the hold-back amounts/post-closing escrow funds." [Doc. 1-10, p. 2].

The next step in the arbitration process was the prevailing party determination. Sellers argued they were the prevailing party in part because they are inevitably bound to receive the balance of the escrowed funds because those funds are not available as payment of any award Buyers may receive in the federal court lawsuit.

The Arbitrator found that Buyers were the prevailing party in Interim Order No. 8. He based this finding in part on Buyers' success in "enforcing their rights under Section 2 of the HEA's to overcome Seller's effort to deprive Buyers of perhaps the only assets that would be available to enforce a judgment for Buyers on their breach of representations and warranties claim." [Doc. No. 1-11].

Sellers then filed this Application in which they request the Court to modify the Arbitrator's Partial Final Award to remove the holdback order leaving the remaining proceeds in escrow until Buyers' suit on their fraud claim is resolved and to award the remaining escrowed proceeds to Sellers. Alternatively, Sellers request the Court to partially vacate the Partial Final Award to grant the same relief. Further in the alternative, Sellers request the Court to modify the Partial Final Award to expressly award the remaining escrowed proceeds to Sellers, to be released to them upon the resolution of the federal suit, no matter what the outcome; or to partially vacate

the Partial Final Award and remand to the Arbitrator to reform it to state the award and disposition of the remaining escrowed proceeds upon resolution of the federal suit. Sellers also request the Court award Sellers their attorney's fees and costs for this application.

The Application is fully briefed, and the Court is prepared to rule.

II. **LAW AND ANALYSIS**

Under the Federal Arbitration Act ("FAA"), the court may vacate an arbitration award when "the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). An arbitrator exceeds his powers if he acts "contrary to express contractual provisions." *Beaird Indus., Inc. v. Local 2297, Int'l Union*, 404 F.3d 942, 946 (5th Cir. 2005) (citing *Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 604 (5th Cir. 1989)).

"Judicial review of an arbitration award is extraordinarily narrow." *Antwine v. Prudential Bache Sec., Inc.*, 899 F.2d 410, 413 (5th Cir. 1990). "The party defending against enforcement of the arbitral award bears the burden of proof." *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 288 (5th Cir. 2004) (citing *Imperial Ethiopian Gov't v. Baruch-Foster Corp.*, 535 F.2d 334, 336 (5th Cir. 1976)).

A. **Did Arbitrator Exceed his Authority?**

Sellers contend that the Court should modify the Partial Final Award and the Interim Order No. 8 on the basis that both awards were made upon the non-arbitrable fraud claim which was not submitted to the Arbitrator.

Sellers assert that the Arbitrator's authority was limited to the matters submitted to arbitration and that he held that the fraud claim was not submitted to arbitration, which resulted in

Buyer's filing the separate suit in this Court. Thus, according to Sellers, the Arbitrator cannot make an award for the fraud claim.

Sellers assert that, despite ruling the fraud claim was non-arbitrable, the Arbitrator nevertheless awarded the holdback order and denied award of the remaining funds to Sellers based on that claim. Further, the Arbitrator based his ruling that Buyers are the prevailing parties on the fact they prevailed in obtaining the holdback order, and because Buyers therefore obtained greater relief than Sellers. Sellers thus contend the prevailing parties award was made "upon" the fraud claim, a claim the Arbitrator himself ruled he had no authority to hear.

In support of their arguments, Sellers cite cases stating "[t]he arbitrator's authority is circumscribed by the arbitration agreement, and he can bind the parties only on issues that they have agreed to submit to him. Whether an arbitrator has exceeded these bounds is an issue for judicial resolution." *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Loc. No. 1*, 611 F.2d 580, 583 (5th Cir. 1980). "[F]ederal courts are free to scrutinize the award to ensure that the arbitrator acted in conformity with the jurisdictional prerequisites of the collective bargaining agreement...Where an arbitrator exceeds his contractual authority, vacation or modification of the award is an appropriate remedy." *Delta Queen Steamboat Co. v. Dist. 2 Marine Engineers Beneficial Ass'n, AFL-CIO*, 889 F.2d 599, 602 (5th Cir. 1989), *citing Container Prods., Inc. v. United Steelworkers of Am.*, 873 F.2d 818, 820 (5th Cir.1989). To issue an award upon a non-arbitrable issue, then, according to Sellers, is to rule on an issue that is not submitted to the arbitrator. It is grounds for modification under 9 U.S.C. § 11(b).

In the alternative, Sellers contend the Arbitrator's award should be partially vacated.

Buyers respond that Sellers actually are asking this Court to rewrite the Arbitrator's decisions and award Sellers $609,001.23 (instead of $0.00), thereby depriving Buyers of what is likely the only source of funds to compensate them for their breach of representations and warranties claims.

Buyers further argue that the arbitration agreement expressly incorporates "the commercial dispute resolution procedures of the American Arbitration Association." [Doc. No. 1-4 at p. 5; Doc. No. 1-5 at p. 5], including AAA Rule R-7, which provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Citing Rule R-7, the Fifth Circuit has held that the incorporation of the AAA rules into an arbitration agreement "presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012).

According to Buyers, Sellers not only agreed in the HEAs to a broad arbitration clause, but also agreed that the Arbitrator himself had the authority to determine the scope of the arbitrable issues. Having so agreed, Buyers contend that Sellers cannot now ask this Court to overturn the Arbitrator's determination that the issue as to the disposition of the escrow balance is within the scope of the parties' arbitration agreement.

Buyers further contend that, even if the parties had not delegated to the Arbitrator the authority to determine the scope of the arbitrable issues, this Court still would be constrained to find that the issue of the disposition of the escrow balance was arbitrable. This is because the issue falls within the scope of the parties' arbitration agreement in the HEAs. The dispute resolution provisions in the HEAs apply to "any dispute, claim, or controversy of any kind between" Sellers

9

and Buyers "arising out of or relating to the performance, meaning or interpretation of any provision of this Agreement or any document executed in connection with this Agreement . . . ." [Doc. No. 1-4 at pp. 4-5; Doc. No. 1-5 at pp. 4-5]. Those same provisions call for arbitration of any such dispute that the parties cannot resolve through mediation or negotiation.[Id. at pp. 5-6] Courts applying the FAA characterize similar arbitration clauses that apply to any disputes "arising out of or relating to" the parties' agreement as "broad arbitration clauses capable of expansive reach." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998).

Additionally, Buyers assert that Sellers themselves submitted the issue to the Arbitrator. Sellers first raised the issue with respect to the escrow balance soon after Interim Order No. 5 issued, when they requested that the Arbitrator order the release of all but $300,000.00 from escrow. Buyers objected. On December 14,2018, in Interim Order No. 7, the Arbitrator noted the "clear" existence of "a dispute between the parties . . . on the release of any escrow funds" and stated in clear terms that "[t]he Final Award will contain a provision on the release of escrow funds." [Doc. No. 5-2]. Sellers did not object to Interim Order No. 7. To the contrary, Sellers proceeded in recognition that the issue of the disposition of the escrow balance was an arbitrable issue, according to Buyers.

Finally, Buyers argue that Sellers even identified that issue in their Pre-Hearing Brief as one of the issues to be decided. [Doc. No. 5-3, p. 9], and, by voluntarily submitting the dispute over the disposition of the escrow balance to the Arbitrator, Sellers empowered him to resolve that issue even if he did not already have that authority under the parties' pre-existing arbitration agreement.

The Court finds that the Arbitrator did not exceed his authority. A reviewing court examining whether arbitrators exceeded their powers must resolve all doubts in favor of arbitration." *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 472 (5th Cir. 2012) (citing *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002)). Furthermore, "[l]imitations on the arbitrators' scope of power must be clear and unambiguous or else they will be construed narrowly." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 343 (5th Cir. 2004).

Thus, a party challenging an arbitrator's award on grounds that the arbitrator exceeded his authority faces a "heavy burden." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569, 133 S. Ct. 2064, 186 L. Ed. 2d 113 (2013); *BNSF Ry Co. v. Alstom Transp., Inc., 777 F.3d785, 788 (5th Cir. 2015)*. Courts must resolve all doubts in favor of the arbitrator's award. *See HCC Aviation Ins. Grp. v. Employers Reins. Corp.*, 243 Fed. Appx. 838, 843 (5th Cir. 2007); *Valentine Sugars*, *Inc. v Donau Corp.*, 981 F.2d 210, 213 (5th Cir. 1993). "[I]f there is ambiguity as to whether an arbitrator is acting within the scope of his authority, that ambiguity must be resolved in favor of the arbitrator." *Downer v. Siegel*, 489 F.3d 623, 627 (5th Cir. 2007) (quoting *Am. Eagle Airlines*, *Inc. v. Airline Pilots Ass'n*, 343 F.3d 401, 405 (5th Cir. 2003)).

Here, the HEAs govern the funds that the parties set aside in escrow. The HEAs address the circumstances under which the escrowed funds are to be held and disbursed. The dispute between the parties as to whether the balance of the funds must remain in escrow until resolution of Buyers' federal court lawsuit against Sellers manifestly "aris[es] out of or relat[es] to the performance, meaning or interpretation of" the HEAs. [Doc. No. 1-4; Doc. No. 1-5].

The fact that the Arbitrator found the merits of the breach of representations and warranties claim to be inarbitrable under the parties' agreements did not foreclose his ruling that the parties'

agreements require that the balance of the escrowed proceeds remain in place as security while those claims are pending. In ruling that the escrow balance must remain in place while Buyers' breach of representations and warranties claims are pending, the Arbitrator did not grant Buyers' relief on the merits of the breach of representations and warranties claim. He simply ruled that the final destination of the escrow balance must await the outcome of the federal court proceeding. The Arbitrator left the question of whether Buyers will receive relief on the breach of representations and warranties claims to be determined in the federal court proceeding, which is consistent with his ruling in Interim Order No. 5.

Sellers strongly assert that the Arbitrator exceeded his authority by ruling that the escrow balance must remain in place as security for Buyers' breach of representations and warranties claims after previously having ruled that those claims are not arbitrable. While Sellers may believe their interpretation is superior to the Arbitrator's, that is not a proper basis for modifying or vacating an arbitration award under the FAA. As the U.S. Supreme Court put it: "Because the parties have contracted to have their disputes settled by an arbitrator chosen by them . . . it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *United Paperworkers Int'l v. Misco*, 484 U.S. 29, 37-38 (1987).

Thus, "[i]t is not enough" for a party challenging an arbitration decision "to show that the [arbitrator] committed an error -- or even a serious error" – in construing the parties' contract. *Oxford Health Plans,* 569 U.S. at 569 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 569 U.S. 662, 671 (2010)). Regardless of a court's views on the merits, the arbitrator's decision must stand so long as the arbitrator was "even arguably construing or applying the contract." *Id*. (quoting *Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62, (2000)); *Clarke's Allied, Inc. v.*

*Rail Source Fuel, L.L.C.*, 662 Fed. Appx. 248, 250 (5th Cir. 2016) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509, (2001)).

Here, the Arbitrator considered the parties' contracts and found that they required that the escrowed proceeds remain in place while Buyers' breach of representation and warranties claims are pending as security for those claims, rather than prohibiting that result.

Additionally, the Court notes that Sellers gave the Arbitrator the authority to resolve the issue by submitting it and by identifying that issue in their Pre-Hearing Brief as one of the issues to be decided.

The Court therefore concludes that the Arbitrator did not exceed his authority by resolving the dispute regarding the disposition of the escrowed proceeds, and, further, the Arbitrator did not make a decision as to a matter that was not submitted to him. Accordingly, Sellers' request that the Court vacate or modify the Partial Final Award on these grounds is DENIED.

**B.     Should the Partial Final Award be Reformed to Award Sellers the Escrow Balance?**

Sellers argue that the Partial Final Award is neither final nor definite and, further, that the Court should modify or vacate it and reform it to provide that all funds presently remaining in escrow shall be payable to Sellers once the federal suit is resolved, *regardless* of the outcome of the federal suit.

Sellers contend that the Partial Final Award does not direct that the remaining funds be paid to Sellers if they prevail in the fraud suit, and to Buyers if they prevail. The Arbitrator's reference to the remaining funds as security for the Buyers' fraud claim is far from an order to pay the fund to the prevailing party, according to Sellers.

Sellers state that, although the Partial Final Award did not expressly award the remaining escrowed proceeds to Sellers, it *implies* that Sellers are entitled to the remaining funds in escrow upon resolution of the federal suit. Sellers reason that all sale proceeds must be released to Sellers unless Buyers have a valid claim, but Buyers proved a valid claim to only $50,998.77. Thus, Sellers' argument is that since all escrowed funds not awarded to Buyers belong to Sellers, the implication is obvious that the remaining funds are awarded to Sellers – Sellers simply have to wait until the federal suit is resolved to receive the money.

Sellers explain that this argument does not affect the merits of the controversy between the parties and does not contravene anything the Arbitrator has decided, but merely completes it. The Arbitrator merely required holdback until resolution of the federal suit. Once the federal suit is resolved, Sellers are entitled to all the escrowed funds, no matter which side prevails, according to Sellers.

The Court finds that the relevant section of the Partial Final Award contradicts Sellers' argument. Section E of the Partial Final Award does not "imply" that Sellers inevitably will receive the escrow balance upon conclusion of the federal court lawsuit. To the contrary, the Arbitrator ruled that the balance remains in escrow as "security for Sellers performance of the representations and warranties that are at issue" in the lawsuit. He reinforced that point in Interim Order No. 8, stating, "the escrow funds must be preserved as security for the breach of representations and warranty claims now pending in federal court, as Section 2 of the HEAs require." He also described the escrow funds as "perhaps the only assets that would be available to enforce a judgment for Buyers on their breach of representations and warranties claims." [Doc. No. 1-11]

The express finding that the remaining escrow funds must remain as security for the breach of representations and warranties claims pending in Buyers' federal lawsuit belies Sellers' contentions that the Partial Final Award "implies" that Sellers are destined to receive those funds regardless of the outcome of that suit and that a modification is necessary to clarify the ultimate disposition of the funds.

Sellers' assertion that their requested modification would not affect the merits of the controversy between the parties also fails. To change the Partial Final Award such that it awards Sellers $609,001.23 and leaves nothing as security for Buyers' breach of representations and warranties claims that are pending in federal court obviously would affect the merits. Indeed, as noted above, the Arbitrator himself considered and rejected Sellers' contention that modifying the Partial Final Award in this manner would not affect the merits.

Finally, Sellers argue that the Partial Final Award should be vacated under 9 U.S.C. §10(a)(4) because it does not constitute a "final, and definite award upon the subject matter submitted." The Fifth Circuit has indicated that an arbitration award is final and definite for purposes of 9 U.S.C. §10(a)(4) if it is "sufficiently specific as to be capable of implementation." *McVay v. Halliburton Energy Servs*., 608 Fed. Appx. 222, 225 (5th Cir. 2015) (quoting *United Mine Workers of Am. Dist. No. 5 v. Consol. Coal Co*., 666 F.2d 806, 809-10 (3d Cir. 1981). The Fifth Circuit has also confirmed not only that the "exceedingly deferential" standard of review applies to challenges under §10(a)(4), *id*.at 224, but also that courts evaluating such a challenge must examine the award in the entire context of the proceeding, *see id*.at 227.

As explained above, the Arbitrator clearly indicated both in Section E of the Partial Final Award and Interim Order No. 8 that escrow balance is "security for the breach of representations

and warranty claims now pending in federal court." Thus, the ultimate disposition of the escrow balance seems clear: If Buyers receive a damages award in the federal lawsuit, that award will be payable out of the escrow balance. If Sellers prevail (or if any funds remain after Buyers' damages are satisfied), Sellers will receive the balance.

Accordingly, the Court DENIES Sellers' request that the Partial Final Award be reformed to award Sellers the escrow balance.

### C. Attorney Fees and Costs

Both Sellers and Buyers request an award of their respective costs and attorney's fees incurred for this Application. Section 14(b) of the Escrow Agreement provides for an award to the prevailing party in any dispute any and all costs and expenses, including, without limitation, court costs and reasonably incurred attorney's fees. [Doc. Nos. 1-4 and 1-5].

Although Buyers are the prevailing party here, the Court will not award attorney's fees or costs under the circumstances of this case. Court challenges to an arbitrator's jurisdiction are considered "justified" even if they do not succeed because it is a common judicial function to determine the scope of an arbitrator's jurisdiction. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (noting that courts ordinarily rule on the arbitrability of specific claims.)

Accordingly, the Court DENIES both parties requests for attorney's fees and costs.

### D. Buyers' Request to Hold This Matter Open

Buyers state they are still awaiting the Arbitrator's final award, which will determine the amount of attorneys' fees and costs Buyers will recover as prevailing parties in the arbitration. Buyers have indicated they will move for an order confirming the arbitration award once the

Arbitrator makes the final award, and they request that the Court hold this matter open for that purpose.

The Court understands that Buyer may presently intend to make additional filings in this matter. However, the Court has made a ruling on all issues that have been presented to it, and, therefore, finds no reason to hold the case open based solely on the possibility of additional issues being submitted.

Accordingly, Buyers' request to hold this matter open is DENIED.

### III. CONCLUSION

For the foregoing reasons, the Application to Modify or Alternatively Partially Vacate Arbitration Awards [Doc. No. 1] filed by Hannie Development, Inc., and Cedar Crest, LLC is DENIED. The Court additionally DENIES both the Sellers' and the Buyers' request for attorneys' fees and costs incurred in handling this Application and DENIES Buyers' request that the Court hold this matter open.

MONROE, LOUISIANA, this 2nd day of August, 2019.

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**